


## JOHN DEERE
### FINANCIAL


Application ID:
Version Number:   2
AG Business or Commercial Use

## LEASE AGREEMENT

| *LESSEE'S NAME AND PHYSICAL ADDRESS* | | | |
|---|---|---|---|
| SHAWN J WILDERMUTH<br>7690 COUNTY ROAD 53<br>LEWISTOWN, OH 43333-9705 | LESSEE'S<br>SOC. SEC. NUMBER | LESSEE'S<br>PHONE NO. | TYPE OF<br>BUSINESS |
| LESSEE RESIDES IN (County/State)<br>LOGAN, OH | | LESSEE AGREES TO KEEP GOODS IN (County/State)<br>See Equipment Location and County for each item of Equipment below | |

| *LESSOR'S NAME AND ADDRESS* | PHONE NUMBER |
|---|---|
| Deere Credit, Inc.<br>P.O. Box 6600<br>Johnston, IA 50131-2945 | 800-825-8297 |

This Lease Agreement ("Lease Agreement") is entered into between Deere Credit, Inc., as Lessor ("we", "us" or "our"), and the Lessee and any Co-Lessee identified above ("you" or "your").

Each Lessee and Co-Lessee shall be jointly and severally liable for all obligations under this Lease Agreement.

### EQUIPMENT LEASED

| Year | Make | Model | Equipment Description | Hour Limit Per Year | Excess Hour Charge | Equipment Location | County | Outside City Limits |
|---|---|---|---|---|---|---|---|---|
| 2017 | JD | 8400 | 8400R Tractor | 300 | $50.00 | LEWISTOWN, OH | LOGAN | Yes |

ADDITIONAL DETAILS

| Product ID | Hour Meter | Asset Level Payment* | Purchase Option Price |
|---|---|---|---|
| 1RW8400RKHS119503 | 8 | $17,625.41 | $242,000.58 |
| Total Purchase Option Price | | | $242,000.58 |

*Asset Level Payments may not include applicable sales taxes. For purposes of this Lease Agreement, "Lease Payments" means the Lease Payment as identified below.

### LEASE PAYMENTS

| LEASE TERM START DATE: October 25, 2017 |
|---|
| LEASE TERM END DATE: October 25, 2022 |

The first Lease Payment Due Date is October 25, 2017 and each successive Lease Payment is due on the same day of the Semi Annual interval thereafter, (the "Billing Period"), unless otherwise provided below.

| NUMBER OF PAYMENTS | AGGREGATE OF ASSET LEVEL PAYMENTS | SALES/USE TAX | LEASE PAYMENT | DUE DATE |
|---|---|---|---|---|
| 1 | $17,625.41 | $0.00 | $17,625.41 | October 25, 2017 |
| 9 | $17,625.41 | $0.00 | $17,625.41 | April 25, 2018 |

RECEIVED

NOV 01 2017

DEERE CREDIT, INC.

### THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE

| DOC7000 | Settlement Nbr: 12492384 | Equipment Type: Agriculture, Agricultural | | |
|---|---|---|---|---|
| Revision Date: 16 January 2017 | Application ID: 12492384 | Version Number: 2 | 10/23/2017 03:24 PM | Page 1 of 5 |




EXHIBIT
A

## TERMS AND CONDITIONS

1.  **Lease Term; Payments.** You agree to lease from us the Equipment described in this Lease Agreement for the Lease Term. The Lease Term will begin on the Lease Term Start Date and end on the Lease Term End Date. All attachments and accessories itemized in this Lease Agreement and all replacements, parts and repairs to the Equipment shall form part of the Equipment. This Lease Agreement is not accepted by us until we sign it, even if you have made a payment to us. You agree to remit the Lease Payments each Billing Period and all other amounts (including applicable sales, use and property taxes) when due to: DEERE CREDIT, INC., P.O. Box 4450, Carol Stream, IL 60197-4450, even if we do not send you a bill or an invoice. YOUR PAYMENT OBLIGATIONS ARE ABSOLUTE, UNCONDITIONAL, AND ARE NOT SUBJECT TO CANCELLATION, REDUCTION OR SETOFF FOR ANY REASON WHATSOEVER. For any payment which is not received by its due date, you agree to pay a late charge equal to 2.000% of the past due amount (not to exceed the maximum amount permitted by law) as reasonable collection costs, plus interest from the due date until paid at a rate of 1.5% per month, but in no event more than the maximum lawful rate. Restrictive endorsements on checks you send us will not change or reduce your obligations to us. If a payment is returned to us by the bank for any reason, you agree to pay us a fee of $25.00 or the maximum amount permitted by law, whichever is less. Lease Payments and other payments may be applied, at our discretion, to any obligation you may have to us or any of our affiliates. If the total of all payments made during the Lease Term exceeds the total of all amounts due under this Lease Agreement by less than $25.00 we may retain such excess. Lease Payments may be based on the assumption that we will be entitled to certain tax benefits as the owner of the Equipment. If you take or fail to take any action that results in a loss of such tax benefits, you will pay us, on demand, this amount we calculate as the value of such lost tax benefits. You certify that the hour meter reading on each Item of Equipment is accurate as of the date you sign this Lease Agreement. If you use any Equipment during the Lease Term for more than the Hour Limit indicated above for that Item of Equipment, you will pay to us within 10 days of the Lease Term End Date (or any earlier termination of this Lease Agreement) an amount equal to the Excess Hour Charge for that Item of Equipment for each hour in excess of the Hourly Limit. If this Lease Agreement is terminated, canceled or extended for any reason, the Hour Limit will be prorated by us in our sole discretion.

2.  **Security Deposit.** If a Security Deposit is indicated in the Advance Lease Payment Invoice, the Security Deposit will be held by us in a non-interest-bearing account commingled with other funds. We may apply the Security Deposit to any amounts due under this Lease Agreement and, if we do so, you agree to promptly remit to us the amount necessary to restore the Security Deposit to the original amount. The Security Deposit will be returned to you within 30 days of termination of this Lease Agreement and final inspection by us, provided you are not in default.

3.  **Taxes.** You agree to pay us when invoiced all sales, use, rental, gross receipts and all other taxes which may be imposed on the Equipment or its use. You agree, at our discretion, to either (a) reimburse us annually for all taxes and governmental charges associated with the ownership, use or possession of the Equipment including, but not limited to, personal property and ad valorem taxes ("Property Taxes"), or (b) remit to us each Billing Period our estimate of the pro-rated equivalent of such Property Taxes. If the estimated Property Taxes paid by you are greater than or less than the Property Taxes paid by us, no adjustment will be made. Taxes do not include those measured by our net income. If applicable law requires tax returns or reports to be filed by you, you agree to promptly file such tax returns and reports and deliver copies to us. You agree to keep and make available to us all tax returns and reports for taxes paid by you.

4.  **Ownership; Missing Information.** We are the owner of the Equipment and you have the right to use the Equipment under the terms of this Lease Agreement. In the event this Lease Agreement is deemed to be a secured transaction and not a lease, you (a) grant us and our affiliates a security interest in the Equipment (and all proceeds) to secure all of your obligations under this Lease Agreement and any other obligations which you may have to us or any of our affiliates; and (b) authorize us to file financing statements naming you as debtor. You agree to keep the Equipment free and clear of liens and encumbrances, except those in our favor, and promptly notify us if a lien or encumbrance is placed or threatened against the Equipment. You irrevocably authorize us, at any time, to (a) insert or correct information on this Lease Agreement, including your correct legal name, serial numbers and equipment descriptions; (b) submit notices and proofs of loss for any required insurance; and (c) endorse your name on remittances for insurance and Equipment sale or lease proceeds.

5.  **Equipment Maintenance, Operation and Use.** You agree to (a) USE THE EQUIPMENT ONLY FOR AGRICULTURAL, BUSINESS OR COMMERCIAL PURPOSES AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES; (b) not permanently move the Equipment to another county or state without notifying us within 30 days; (c) operate and maintain the Equipment in accordance with all (i) laws, ordinances and regulations, (ii) manuals and other instructions issued by the manufacturer(s) and supplier(s), and (iii) insurance policy terms and requirements; (d) perform (at your own expense) all maintenance and repairs necessary to keep the Equipment in as good a condition as when delivered to you, reasonable wear excepted; (e) not install any accessory or device on the Equipment which negatively affects the value, useful life or the originally intended function or use of the Equipment in any way unless it can be removed without damaging the Equipment; (f) allow us and our agent(s) to inspect the Equipment and all of your records related to its use, maintenance and repair at any reasonable time; (g) keep any metering device installed on the Equipment connected and in good working condition at all times; (h) affix and maintain, in a prominent place on the Equipment, any labels, plates or other markings we may provide to you; and (i) not permit the Equipment to be used by, or to be in the possession of, anyone other than you or your employees.

6.  **Insurance.** You agree, at your cost, to (a) keep the Equipment insured against all risks of physical damage for no less than its Termination Value (as such term is defined in Section 7 below), naming us (and our successors and assigns) as sole loss payee; and (b) maintain public liability insurance, covering personal injury and property damage for not less than $1,000,000 per occurrence, naming us (and our successors and assigns) as additional insured. All insurance must be with companies and policies acceptable to us. Your obligation to insure the Equipment continues until you return the Equipment to us and we accept it. Each insurance policy must provide that (a) our interest in the policy will not be invalidated by any act, omission, breach or neglect of anyone other than us; and (b) the insurer will give us at least 30 days' prior written notice before any cancellation of, or material change to, the policy.

    Unless you provide us with evidence of the required insurance coverages, we may purchase insurance, at your expense, to protect our interests in the Equipment. This insurance may not (a) protect your interests; or (b) pay any claim that you make or any claim that is made against you in connection with the Equipment. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained the insurance required by this Lease Agreement. The cost of the insurance may be more than the cost of insurance you may be able to obtain on your own.

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

| DOC7000 | Settlement Nbr: 12492384 | Equipment Type: Agriculture Agricultural | |
|---|---|---|---|
| | Application ID: 12492384 | Version Number: 2 | 10/23/2017 03:24 PM |
| Revision Date: 15 January 2017 | | | Page 2 of 5 |



**7.   Loss or Damage.** Until the Equipment is returned to us in satisfactory condition, you are responsible for all risk of loss, damage, theft, destruction or seizure of the Equipment (an "Event of Loss"). You must promptly notify us of any Event of Loss. If the Equipment can be repaired or replaced, you agree to promptly repair or replace the Equipment, at your cost, and the terms of this Lease Agreement will continue to apply. If the Equipment cannot be repaired or replaced, you agree to pay us, within 10 days of the Event of Loss, its Termination Value as of the day before such Event of Loss occurred. Upon receipt of the Termination Value, we will transfer to you (or the insurance company) all of our rights, title and interest in such Item(s) of Equipment (each, an "Item of Equipment") AS-IS, WHERE-IS, WITHOUT ANY WARRANTY AS TO CONDITION OR VALUE.

All insurance proceeds must be paid directly to us, and we may apply any excess insurance proceeds to any other amounts you owe us or any of our affiliates. "Termination Value" for any Item of Equipment shall be the net book value calculated as the sum of (a) all Lease Payments and any other amounts then due and payable to us; plus (b) the present value of all remaining Lease Payments and other amounts, discounted at the Discount Rate plus (c) the cost to repair and refurbish the Item so that it is in satisfactory condition in accordance with Section 10; plus (d) the present value of the Purchase Option Price (or, if there is no Purchase Option Price, the residual value that we assumed in calculating the Lease Payments) discounted at the Discount Rate. "Internal Rate of Return" shall be calculated using standard finance techniques with the equipment cost, Lease Payments, Lease Term and Purchase Option Price (or residual value assumption) as the variables. "Discount Rate" shall mean the Internal Rate of Return minus two percentage points (2%).

**8.   Purchase Option.** In the event you desire to purchase an Item of Equipment at the Lease Term End Date and you are not in default, you agree to pay us the applicable Purchase Option Price (plus applicable Taxes [plus estimated property taxes] for each Item of Equipment. Upon receipt of the Purchase Option Price and any other amounts you owe us on or before the Lease Term End Date, we will transfer to you all of our right, title and interest in such Item(s) of Equipment AS-IS, WHERE-IS, WITHOUT ANY WARRANTY AS TO CONDITION OR VALUE.

**9.   Early Payoff.** In the event you desire to purchase an Item of Equipment prior to the Lease Term End Date, are not in default, and you request a payoff amount quote, you agree to pay us the payoff amount. Upon receipt of the payoff amount, we will transfer to you all of our right, title and interest in such Item of Equipment AS-IS, WHERE-IS, WITHOUT ANY WARRANTY AS TO CONDITION OR VALUE.

**10.   Return of Equipment.** If this Lease Agreement is terminated for any reason and you do not (a) return the Equipment to us, or, (b) exercise any Purchase Option, you agree to remit to us, until such time as the Equipment is returned to us in accordance with the provisions of this Section, lease payments each month equal to the higher of (i) the monthly fair market rental value of the Equipment, as determined by us in our sole discretion, or (ii) the monthly Lease Payment (or the monthly lease payment equivalent if the Lease Payments are other than monthly (e.g., for annual Lease Payments, the monthly lease payment equivalent would be calculated by dividing the annual Lease Payment by 12)). All Equipment must be returned to the nearest John Deere dealer that sells equipment substantially similar to the Equipment, at your expense and in satisfactory condition, along with all use, maintenance and repair records. Equipment is in satisfactory condition if it is in as good a condition as when the Equipment was delivered to you, reasonable wear excepted. Unsatisfactory condition shall include any condition described below ("Excessive Wear and Tear"):

**(a) Mechanical.** (A) Computer systems or safety and emission control equipment not in proper working order; (B) mechanical components that are missing, broken or unsafe or that do not operate normally, given the age of the Equipment; (C) wear on power train assembly that exceeds manufacturer's standards for normal wear and tear; (D) any air filters not within manufacturer's specifications; (E) any gauges or fluid indicators that are damaged or do not function; (F) the electrical system fails to operate properly; (G) the battery fails to hold a charge; (H) any wire harnesses not tied down and kept secured, dry and clean; (I) any pumps, motors, valves or cylinders not in good operating condition or that fail to meet manufacturer's rated specifications; (J) hydraulic system exceeds manufacturer's then-current contaminant standards (as shown by oil sample analysis); (K) equipment not serviced according to manufacturer's operating manual; and/or (L) any lubricant, water or A/C seal leaks.

**(b) Exterior.** (A) Dents larger than 2 inches in diameter; (B) excessive number of dents or scratches; (C) any scratch 8" or longer that reaches the metal skin; (D) any single chip the size of a quarter or larger or multiple small chips within one square foot; (E) substandard paint repairs, such as peeling, bubbling or mismatched shades that evidence poor condition in comparison to the original paint and require repainting at a cost in excess of $200; (F) rust holes in the body metal or a rust spot that covers more than a 4-inch square area; (G) any glass that must be replaced due to cracks or missing glass and any windshield damages cracked or broken glass must be replaced; (H) all frame damage and substandard frame repairs; and/or (I) any tires or tracks that (i) have broken side walls or excessive cuts or damage, (ii) have less than 50% of the original useful life remaining, or (iii) are not of the same size, type grade or equivalent quality manufacturer as were originally included on the Equipment.

**(c) Cab/Operator Platform.** (A) Heavy interior soil or strong odors, such as manure, that cannot be removed by general cleaning; (B) unclean condition of operator environment; and/or (C) holes, tears, or burns on the dash, floor covers, seats, headliners, upholstery or interior.

**(d) General.** (A) Equipment not operated or maintained in accordance with manufacturer's specifications or if components, fuels or fluids, or in connection with the Equipment that do not meet manufacturer's standards were used; and/or (B) any other damage that in the aggregate costs $250 or more to repair or that makes the Equipment unlawful or unsafe to operate.

**(e) Other.** (A) All warranty and PIP ("Product Improvement Program") work relating to the Equipment must be completed prior to the Lease Term End Date; (B) the Equipment must be cleaned prior to its return.

**(f) Hour Meter.** For each Item of Equipment returned with a broken or missing hour meter, you shall accept an invoice from us and remit to us an amount equal to $1,000. You agree that the hour meter included with the Equipment is conclusive of the number of hours of Equipment use.

**(g) Invoices for Excess Wear and Tear.** Upon any return of the Equipment, we shall, in our sole discretion, determine the existence of any Excessive Wear and Tear. In the event any Item of Equipment is returned to us with Excessive Wear and Tear, you shall, at our sole discretion, (A) accept an invoice from us and remit to us the cost of repairing or replacing the affected component(s) which we determine necessary to return the Equipment to its required condition and/or (B) accept an invoice from us and remit to us an amount equal to our estimate of (i) the cost of new tires or tracks if the tires or tracks are damaged due to broken side walls or excessive cuts or damage, or (ii) the cost of new tires or tracks multiplied by the difference between (a) our estimate of the percentage of the useful life of the tires and tracks then remaining, and (b) 50%. For example, if you return Equipment with tires having 20% of their useful life remaining, you would remit to us an amount equal to 30% of the cost of new tires ([50% − 20%] multiplied by the cost of new tires). Your failure to remit the required payment to us within 10 days of demand shall constitute a default by you under the terms of this Lease Agreement.

---

## THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE



11. **Default.** You will be in default if: (a) you fail to remit to us any Lease Payment or other payment when due; (b) you breach any other provision of this Lease Agreement and fail to cure such breach within 10 days; (c) you remove any Equipment from the United States; (d) a petition is filed by or against you or any guarantor under any bankruptcy or insolvency law; (e) a default occurs under any other agreement between you (or any of your affiliates) and us (or any of our affiliates); (f) you or any guarantor is acquired by, merges with or consolidates into another entity, sells substantially all its assets, dissolves or terminates its existence, or (if an individual) dies; or (g) you fail to maintain the insurance required by Section 6. Time is of the essence under this Lease Agreement.

12. **Remedies.** If a default occurs, we may, to the extent permitted by applicable law, do one or more of the following: (a) require you to return the Equipment in the manner outlined in Section 10, or take possession of the Equipment; (b) recover from you, AS LIQUIDATED DAMAGES FOR LOSS OF BARGAIN AND NOT AS A PENALTY: (i) if the Equipment is returned to us, the sum of (1) all Lease Payments and any other amounts then due and payable to us; (2) the present value of all remaining Lease Payments and other amounts, discounted at the Discount Rate; (3) the cost to repair and refurbish the item of Equipment so that it is in satisfactory condition in accordance with Section 10; and (4) the unamortized amount of our initial direct costs of originating and administering this Lease Agreement (ii) if the Equipment is returned to us and this Lease Agreement is deemed to be a secured transaction and not a lease in our sole discretion, the difference between (1) the Termination Value as of the date of such default; and (2) the net proceeds we receive from any sale, lease or other disposition of the Equipment (after deducting all of our costs and expenses) or (iii) if the Equipment is not returned to us, the Termination Value as of the date of such default; (c) declare any other agreements between you and us (or any of our affiliates) in default; (d) terminate any of your rights (but none of your obligations) under this Lease Agreement and any other agreement between you and us (or any of our affiliates); (e) charge you for the expenses incurred in connection with the enforcement of our remedies including, without limitation, repossession, repair and collection costs, attorneys' fees and court costs; (f) exercise any other remedy available at law or in equity; and (g) take on your behalf (at your expense) any action required by this Lease Agreement which you fail to take. These remedies are cumulative, are in addition to any other remedies provided by law, and may be exercised concurrently or separately. Any failure or delay by us to exercise any right shall not operate as a waiver of any other right or future right.

13. **Assignment.** You will not assign, pledge or otherwise transfer any of your rights or interests in this Lease Agreement or any Equipment without our prior written consent. Any assignment without our consent will be void. This Lease Agreement shall be binding upon any successor or permitted assignee. We may assign this Lease Agreement or our interest in the Equipment at any time without notice to you and without your consent. We may provide information about you to any prospective assignee or participant. You agree not to assert against our assignee any claims, offsets or defenses which you may have against us.

14. **Indemnity.** You are responsible for all losses, damage, claims, injuries to or the death of an individual, and attorneys' fees and costs ("Claims"), incurred or asserted by any person, in any manner related to the Equipment or this Lease Agreement thereof, including its use, condition or possession. You agree to defend and indemnify us, and hold us harmless, against all Claims, although we reserve the right to control the defense and to select or approve defense counsel. You will promptly notify us of all Claims made. Your liability under this Section is not limited to the amounts of insurance required under this Lease Agreement. This indemnity continues beyond the termination of this Lease Agreement for acts or omissions which occurred during the Lease Term.

15. **Representations and Warranties.** You represent and warrant to us, as of the date of this Lease Agreement, and covenant to us so long as this Lease Agreement is in effect, that: (a) you will not change your name without giving us at least 30 days' prior written notice; (b) each document you sign and deliver to us is duly authorized, executed and delivered by you, and is your valid, legal and binding agreement, enforceable in accordance with its terms; (c) execution, delivery and performance by you of this Lease Agreement does not and will not (i) violate any applicable law; or (ii) breach any order of court or other governmental agency, or of any undertaking you are a party to or by which you or any of your properties are bound; (d) you will comply with all applicable laws, ordinances and regulations; (e) all information you have given to us is true, accurate and complete; and (f) since the date of the most recent financial information given to us, no material adverse change in your business, assets, or prospects has occurred. You will promptly deliver to us such financial statements, reports and other information as we may request.

Unless you are an individual, you also represent and warrant to us that: (a) you are and will remain duly organized, validly existing and in good standing under the laws of your jurisdiction of organization; (b) you are qualified to do business under the laws of all other jurisdictions where qualification is required or advisable; (c) you will not change your jurisdiction of organization or organization type without at least 30 days' prior written notice to us; and (d) the execution, delivery and performance by you of this Lease Agreement will not breach any provision of your organizational documents.

You acknowledge and agree that: (a) we did not select, manufacture or supply any of the Equipment; (b) we acquired the Equipment at your direction; (c) you selected the supplier of the Equipment; (d) you are entitled to all manufacturer warranties ("Warranty Rights") and we assign all Warranty Rights to you, to the extent assignable; (e) you may request an accurate and complete statement of this Warranty Rights, including any disclaimers and limitations, directly from the manufacturer; and (f) you assign to us all your rights (but none of your obligations) under all purchase orders, purchase agreements or similar documents relating to the Equipment. You waive all rights and remedies conferred upon a lessee under Sections 508 - 522 of Article 2A of the Uniform Commercial Code.

16. **Governing Law; Jurisdiction; Venue.** THIS LEASE AGREEMENT WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF IOWA, WHERE THIS LEASE AGREEMENT IS ACCEPTED AND ENTERED INTO, except for its conflict of laws provisions. You irrevocably submit to the non-exclusive jurisdiction and venue of federal and state courts located in Des Moines, Iowa and will not claim it is an inconvenient forum for legal action. YOU AND WE IRREVOCABLY WAIVE ANY RIGHT YOU AND WE MAY HAVE TO A JURY TRIAL.

17. **Miscellaneous.** WE HAVE NOT MADE, AND DO NOT MAKE, ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE EQUIPMENT'S MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY, OR OTHERWISE. WE ARE NOT LIABLE FOR CONSEQUENTIAL OR SPECIAL DAMAGES. You acknowledge that no supplier or dealer of the Equipment is an agent of ours, or authorized to act for or bind us. You agree not to withhold any amount you owe us if you believe you have a claim against us, or any Equipment supplier(s) or manufacturer(s), but to pursue that claim independently. Any claim you have against us must be made within two years after the event that caused it. All notices must be in writing and will be deemed given 5 days after mailing to the intended recipient at its address indicated above, unless changed by a notice given in accordance with this Section. This Lease Agreement supersedes and replaces all prior understandings and communications (oral or written) concerning the subject matter thereof. Except as otherwise provided in Section 12(d) no part of this Lease Agreement can be amended, waived or terminated except by a writing signed by both you and us. Any part of this Lease Agreement may be signed in separate counterparts that, together, will constitute one document. If a court finds any part of this Lease Agreement to be invalid or unenforceable, the remainder of this Lease Agreement will remain in effect. You permit us to monitor and record telephone conversations between you and us. By providing your telephone number, including a mobile phone number, to us, any of our affiliates or any debt collectors we retain, we, such affiliates and such retained debt collectors can contact you using that number, including calls using an automatic dialing and announcing device and prerecorded calls, and that such calls are not "unsolicited" under state or federal law. All of our rights under this Lease Agreement shall remain in effect after the expiration of the Lease Term or termination of this Lease Agreement.

Notwithstanding any other election you make, you agree that (a) we can access, retain and use, at any times we elect any

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

| DOC7000 | Settlement Nbr: 12492384 | Equipment Type: Agriculture Agricultural | | |
|---|---|---|---|---|
| | Application ID: 12492384 | Version Number: 2 | 10/23/2017 03:24 PM | Page 4 of 5 |

Revision Date: 15 January 2017



information regarding the location, maintenance, operation and condition of the Equipment; (b) you irrevocably authorize anyone in possession of that information to provide all of that information to us upon our request until our security interest in the Equipment is terminated; (c) you will not disable or otherwise interfere with any information gathering or transmission device within or attached to the Equipment; and (d) we may reactivate any such device. You also agree that the Delivery and Acknowledgment and any other document related to this Lease Agreement signed by Lessee shall be binding on each Co-Lessee.

You acknowledge and agree that our right to sell the Equipment under this Lease Agreement will be, at our sole discretion, assigned to John Deere Exchange, LLC. Notwithstanding anything above to the contrary, regardless of our assignment of these rights, you acknowledge and agree that all obligations of you and us under this Lease Agreement shall govern the relationship between you and us hereto.

THE TERMS OF THIS LEASE AGREEMENT SHOULD BE READ CAREFULLY BEFORE SIGNING BECAUSE ONLY THESE WRITTEN TERMS ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES MAY BE LEGALLY ENFORCED. BY SIGNING THIS LEASE AGREEMENT, YOU AGREE TO ALL OF THE TERMS AND CONDITIONS SET FORTH IN THIS LEASE AGREEMENT. THIS LEASE AGREEMENT IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN YOU AND US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

NOTICES TO THE LESSEE- DO NOT SIGN THIS LEASE AGREEMENT IN BLANK. YOU ARE ENTITLED TO A COPY OF THE LEASE AGREEMENT AT THE TIME YOU SIGN IT TO PROTECT YOUR LEGAL RIGHTS.

_____    X _____
(Date Signed)        SHAWN J WILDERMUTH

Accepted By: **Deere Credit, Inc. (Lessor)**
    6400 NW 86th Street, Johnston, IA 50131-6600

_____    By: _____
(Date Agreement Signed)        (Authorized Signature)

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

| DOC7000 | Settlement Nbr: 12492384 | Equipment Type: Agriculture Agricultural | | |
| Revision Date: 16 January 2017 | Application ID: 12492384 | Version Number: 2 | 10/23/2017 03:24 PM | Page 5 of 5 |





JOHN DEERE
FINANCIAL

# Lease Schedule

| Lease Schedule No. | 1-003 |
|---|---|
| Master Lease Agreement No. | |

| Lessee: (Name & Address) | SHAWN J WILDERMUTH 7690 COUNTY ROAD 53 , LEWISTOWN, OH 43333-9709 |
|---|---|
| Lessor: | DEERE CREDIT, INC. 6400 NW 86ᵗʰ ST, PO BOX 6600, JOHNSTON, IA 50131-6600 |

## LEASE TERM

| Lease Term Start Date | Lease Term End Date | # Of Payments | Lease Payment | *Sales/Use Tax | Total Lease Payment | Purchase Option Price |
|---|---|---|---|---|---|---|
| 10/20/2016 | 10/20/2021 | 5 | $16,485.91 | $0.00 | $16,485.91 | $119,138.00 |

*If part of the regular scheduled lease payment

## RENEWAL TERM

| Renewal Term Start Date | Renewal Term End Date | # Of Payments | Renewal Lease Payment Amount | Sales/Use Tax | Total Renewal Lease Payment | Purchase Option Price |
|---|---|---|---|---|---|---|
| | | | | | | |

## PAYMENT TERMS | PAYMENT DUE AT SIGNING

| Due Date | 1ˢᵗ Payment Due Date | Discount Rate | Advance Lease Payment** | $16,485.91 |
|---|---|---|---|---|
| 20 | 10/20/2016 | Internal Rate of Return minus 2 percent (2%) | Origination Fee | $0.00 |
| Billing Period | Irregular Payments | | Security Deposit | $0.00 |

☐ Monthly
☐ Quarterly
☐ Semi-Annual
☒ Annual
☐ Irregular

| Total Due At Signing | $16,485.91 |
|---|---|

**Advance Lease Payment includes the first (1) and last (0) Lease Payment(s)

"Master Agreement" shall mean the above referenced Master Lease Agreement. "Schedule" shall mean this Lease Schedule. "Lease" shall mean this Schedule and the Master Agreement. All of the terms and conditions set forth in the Master Agreement and any amendment, addendum, schedule or attachment thereto or hereto including, but not limited to, the Equipment Return Provisions are hereby incorporated into and made a part of this Schedule.

**Lease Payments.** You agree to remit the Lease Payments (and applicable sales, use and property taxes) on the dates noted above and all other amounts when due to: DEERE CREDIT, INC., P.O. Box 4450, Carol Stream, IL 60197-4450.

**Hourly Charges.** You certify that the hour meter reading on each item of Equipment is accurate as of the date you sign this Schedule. If you use any Equipment during the Lease Term for more than the Hourly Limit indicated above for that item of Equipment, you will pay to us within 10 days of the Lease Term End Date (or any earlier termination of the Lease) an amount equal to the Excess Hour Charge for that item of Equipment for each hour in excess of the Hourly Limit. If the Lease is terminated, cancelled or extended for any reason, the Hourly Limit will be prorated by us in our sole discretion.

**Purchase Option.** You may purchase the Equipment on the Lease Term End Date (or the Renewal Term End Date) for the applicable Purchase Option Price (plus applicable Taxes including estimated property taxes), provided (1) you are not in default; and (2) we receive the Purchase Option Price and any other amounts you owe us on or before the Lease Term End Date (or the Renewal Term End Date). Upon receipt of the Purchase Option Price, we will transfer to you all of our right, title and interest in such item(s) of Equipment AS-IS, WHERE-IS, WITHOUT ANY WARRANTY AS TO CONDITION OR VALUE.

**Renewal Term.** If (1) a Renewal Term is provided for above, and (2) you notify us at least sixty (60) days prior to the end of the Lease Term that you intend to renew the Lease for the Renewal Term, the Lease shall renew for the Renewal Term. You agree to remit to us the Renewal Lease Payments indicated above (plus applicable taxes and other amounts) when due and payable each Billing Period, even if not invoiced by us or you pay a bill or an invoice.

**Representations and Warranties.** You represent and warrant to us, as of the date you signed this Schedule, that (1) the Equipment was selected by you; (2) the Equipment (including all manufacturer manuals and instructions) has been delivered to, and examined by, you; (3) the safe operation and the proper servicing of the Equipment were explained to you; (4) you received the written warranty applicable to the Equipment and understand that your rights under the written warranty may be limited; (5) the Equipment is unconditionally and irrevocably accepted by you as being suitable for its intended use; (6) the Equipment is in good condition and repair (operating and otherwise); (7) the Equipment shall be used only for the purpose indicated herein; (8) except as disclosed to us, neither you nor any person related to you will have an equity interest in the Equipment on the Lease Term Start Date; and (9) all information provided to us by you is true and correct.

You acknowledge and agree that: (1) we did not select, manufacture or supply any of the Equipment; (2) we acquired the Equipment at your direction; (3) you selected the supplier of the Equipment; (4) you are entitled to all manufacturer warranties ("Warranty Rights") and we assign all Warranty Rights to you, to the extent assignable; (5) you may request an accurate and complete statement of the Warranty Rights, including any disclaimers and limitations, directly from the manufacturer; and (6) you assign to us all your rights (but none of your obligations) under all purchase orders, purchase agreements or similar documents relating to the Equipment. You waive all rights and remedies conferred upon a lessee under Sections 508 – 522 of Article 2A of the Uniform Commercial Code.

Lease Payments may be based on the assumption that we will be entitled to certain tax benefits as the owner of the Equipment. If you take or fail to take any action that results in a loss of such tax benefits, you will pay us, on demand, the amount we calculate as the value of such lost tax benefits.

AG MLA Operating Lease Stated Purchase Option
March 7 2016

RECEIVED

OCT 25 2016

App ▮▮▮▮▮

DEERE CREDIT, INC.

EXHIBIT
B

**Miscellaneous.**  You agree that we can access any information regarding the location, maintenance, operation and condition of the Equipment, and you irrevocably authorize anyone in possession of such information to provide all of that information to us upon our request. You also agree to not disable or otherwise interfere with any information-gathering or transmission device within or attached to the Equipment. You permit us to monitor and record telephone conversations between you and us. By providing any telephone number, including a mobile phone number, to us, any of our affiliates or any debt collectors we retain, we, such affiliates and such retained debt collectors can contact you using that number, including calls using an automatic dialing and announcing device and prerecorded calls, and that such calls are not "unsolicited" under state or federal law.   All of our rights under each Lease shall remain in effect after the expiration of the Lease Term or termination of the Schedule.

RECEIVED

OCT 2 5 2016

DEERE CREDIT, INC.   App ▮▮▮▮

AG MLA Operating Lease Stated Purchase Option
March 7 2016

## Lease Schedule – Equipment List

| Supplier (Name & Address) | KOENIG EQUIPMENT INC P. O. BOX 549, BOTKINS , OH 45302 |
|---|---|

| | EQUIPMENT INFORMATION | | | | | | | | |

| Year | Make | Model | Equipment Description | Serial Number | Hour Meter | Hour Limit | Excess Hour Charge | Payment | Purchase Option |
|---|---|---|---|---|---|---|---|---|---|
| 2010 | JD | 8345RRW | 8345R ROW CROP TRACTOR | 1RW8345RPAD013516 | 1750 | 300/YR | $50.00/HR | $16,485.91 | $119,138.00 |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

| Equipment Location | 7690 COUNTY ROAD 53, LEWISTOWN, OH, 43333-9709 | OUTSIDE city limits: ☑ | LOGAN COUNTY |
|---|---|---|---|

BY SIGNING THIS SCHEDULE, YOU AGREE TO ALL OF THE TERMS AND CONDITIONS OF THIS SCHEDULE AND THE MASTER AGREEMENT.

LESSEE  SHAWN J WILDERMUTH
7690 COUNTY ROAD 53
LEWISTOWN, OH 43333-9709

By: SHAWN J WILDERMUTH

Date: 10/20/16

LESSOR  DEERE CREDIT, INC.
6400 NW 86th ST, PO BOX 6600
JOHN DEERE CREDIT INC.
LEASE PROCESSING

By:

Date: OCT 28 2016

AG MLA Operating Lease Stated Purchase Option
March 7 2016

RECEIVED
OCT 25 2016
DEERE CREDIT, INC.

App

# JOHN DEERE FINANCIAL

## Equipment Return Provisions

| Lease Schedule No. | ▮▮▮1-003 |
|---|---|
| Master Lease Agreement No. | ▮▮▮▮ |

| **Lessee:**<br>(Name & Address) | **SHAWN J WILDERMUTH**<br>7690 COUNTY ROAD 53 , LEWISTOWN, OH 43333-9709 |
|---|---|
| **Lessor:** | **DEERE CREDIT, INC.**<br>6400 NW 86th ST, PO BOX 6600, JOHNSTON, IA 50131-6600 |

The following Equipment Return Provisions are hereby incorporated into and made a part of the above referenced Master Lease Agreement (the "Master Agreement"), and entered into between Deere Credit, Inc., as Lessor ("us", "we" or "our"), and SHAWN J WILDERMUTH, as Lessee ("you" or "your"). Pursuant to Section 9 of the Master Lease Agreement, all Equipment must be returned to us in satisfactory condition. Unsatisfactory condition shall include any condition described in Sections 1 through 4 below ("Excessive Wear and Tear").

1. **Mechanical.**
   A. Computer systems or safety and emission control equipment not in proper working order.
   B. Mechanical components that are missing, broken or unsafe or that do not operate normally, other than normal tune-ups, given the age of the equipment.
   C. Wear on power train assembly that exceeds manufacturer's then current standards for normal wear and tear.
   D. Any air filters not within manufacturer's specifications.
   E. Any gauges or fluid indicators that are damaged or do not function, the electrical system fails to operate properly, the battery fails to hold a charge or any wire harnesses that are not tied down and kept secured, dry and clean.
   F. Any pumps, motors, valves or cylinders not in good operating condition or that fail to meet manufacturer's rated specifications or hydraulic system exceeds manufacturer's then-current contaminant standards (as shown by oil sample analysis). Equipment not serviced according to the manufacturer's operating manual.
   G. Any lubricant, water or A/C seal leaks.

2. **Exterior.**
   A. Dents larger than 2 inches in diameter.
   B. Excessive number of dents or scratches.
   C. Any scratch 6" or longer that reaches the metal skin.
   D. Any single chip the size of a quarter or larger or multiple small chips within one square foot.
   E. Substandard paint repairs, such as peeling, bubbling or mismatched shades that evidence poor condition in comparison with original paint and require repainting at a cost in excess of $200.
   F. Rust holes in the body metal or a rust spot that covers more than a 4-inch square area.
   G. Any glass that must be replaced due to cracks or missing glass and any windshield damages greater than $50 in amount.
   H. All frame damage and substandard frame repairs.
   I. Any tires or tracks that (a) have broken side walls or excessive cuts or damages, or (b) have less than 50% of the original useful life remaining, or (c) are not of the same size, type grade or equivalent quality manufacturer as were originally included on the Equipment.

3. **Cab/Operator Platform.**
   A. Heavy interior soil or strong odors, such as manure, that cannot be removed by general cleaning.
   B. Unclean condition of operator environment.
   C. Holes, tears, or burns on the dash, floor covers, seats, headliners, upholstery or interior.

4. **General.**
   A. Equipment not operated or maintained in accordance with the manufacturer's specifications or if components, fuels or fluids, on or in connection with the Equipment that do not meet manufacturer's standards were used.
   B. Any other damage that in the aggregate costs $250 or more to repair or that makes the Equipment unlawful or unsafe to operate.

5. **Other.**
   A. All warranty and PIP work must be completed prior to the Lease Term End Date of the Lease Schedule relating to the Equipment.
   B. The Equipment must be cleaned prior to its return.

6. **Hour Meter.** For each item of Equipment returned with a broken or missing hour meter, you shall accept an invoice from us and remit to us an amount equal to $1,000. You agree that the hour meter included with the Equipment is conclusive of the number of hours of Equipment use.

7. **Invoices for Excess Wear And Tear.** Upon any return of the Equipment, we shall, in our sole discretion, determine the existence of any Excessive Wear and Tear. In the event any item of Equipment is returned to us with Excessive Wear and Tear, you shall, at our sole discretion, either (i) accept an invoice from us and remit to us the cost of repairing or replacing the affected component(s) which we determine necessary to return the Equipment to its required condition, and/or (ii) accept an invoice from us and remit to us an amount equal to our estimate of (1) the cost of new tires or tracks if the tires or tracks are damaged due to broken side walls or excessive cuts or damage, or (2) the cost of new tires or tracks multiplied by the difference between (A) our estimate of the percentage of the useful life of the tires and tracks then remaining, and (B) fifty percent (50%). For example, if you return Equipment with tires having 20% of their useful life remaining, you would remit to us an amount equal to 30% of the cost of new tires ((50% - 20%) multiplied by the cost of new tires). Your failure to remit the required payment to us within ten (10) days of demand shall constitute a default by you under the terms of the Lease.

| LESSEE | SHAWN J WILDERMUTH<br>7690 COUNTY ROAD 53<br>LEWISTOWN, OH 43333-9709 | LESSOR | DEERE CREDIT, INC.<br>6400 NW 86th ST, PO BOX 6600<br>JOHNSTON, IA 50131-6600 |
|---|---|---|---|
| By: | *Shawn E Wildermuth*<br>SHAWN J WILDERMUTH | By: | **DEERE CREDIT, INC.**<br>**LEASE PROCESSING** |
| Date: | 10/20/16 | Date: | OCT 28 2016 |

RECEIVED

OCT 25 2016

DEERE CREDIT, INC.

AG MLA Operating Lease Stated Purchase Option
March 7 2016

App ▮▮▮

# JOHN DEERE FINANCIAL

## Delivery and Acknowledgment

| Lease Schedule No. | 1-003 |
|---|---|
| Master Lease Agreement No. | |

| Lessee:<br>(Name & Address) | SHAWN J WILDERMUTH<br>7690 COUNTY ROAD 53, , LEWISTOWN, OH 43333-9709 |
|---|---|
| Lessor: | DEERE CREDIT, INC.<br>6400 NW 86th ST, PO BOX 6600, JOHNSTON, IA 50131-6600 |

Capitalized terms shall have the meanings set forth in the above referenced Master Lease Agreement.

Lessee hereby represents and warrants that: (1) all of the Equipment more fully described in the above referenced Lease Schedule was selected by Lessee; (2) all of the Equipment and the Operator's Manuals have been delivered to, and received by, Lessee; (3) all of the Equipment has been inspected by Lessee and is in good working order; (4) all of the Equipment is unconditionally and irrevocably accepted by Lessee for all purposes under the Lease; (5) the safe operation and the proper servicing of the Equipment have been explained to Lessee; (6) Lessee received the manufacturer's written warranty applicable to the Equipment and Lessee understands that its rights are subject to the limitations outlined therein; (7) no Event of Default has occurred and is continuing; and (8) no material adverse change in the financial or business condition of Lessee has occurred since the date of the last financial statement submitted to Lessor by Lessee.

Signed by Lessee's duly authorized representative on the date shown below.

| LESSEE | SHAWN J WILDERMUTH<br>7690 COUNTY ROAD 53<br>LEWISTOWN, OH 43333-9709 | LESSOR | DEERE CREDIT, INC.<br>6400 N.W.86th STREET, PO BOX 6600<br>JOHNSTON, IA 50131-6600 |
|---|---|---|---|
| By: | _Shawn J Wildermuth_<br>SHAWN J WILDERMUTH | By: | DEERE CREDIT, INC.<br>LEASE PROCESSING |
| Date: | 10/20/16 | Date: | OCT 28 2016 |

RECEIVED
OCT 25 2016
DEERE CREDIT, INC.

# JOHN DEERE FINANCIAL

## Renewal Lease Schedule

| | |
|---|---|
| **Lease Schedule No.** | ██████1-004 |
| **Master Lease Agreement No.** | ██████ |

| | |
|---|---|
| **Lessee:** (Name & Address) | SHAWN J WILDERMUTH<br>7690 CO RD 53 , LEWISTOWN, OH 43333 |
| **Lessor:** | DEERE CREDIT, INC.<br>6400 NW 86th ST, PO BOX 6600, JOHNSTON, IA 50131-6600 |

### RENEWAL TERM

| Renewal Term Start Date | Renewal Term End Date | # Of Payments | Renewal Lease Payment Amount | *Sales/Use Tax | Total Renewal Lease Payment | Purchase Option Price |
|---|---|---|---|---|---|---|
| 05/28/2017 | 05/28/2022 | 10 | $12,130.88 | $0.00 | $12,130.88 | $153,000.00 |

*If part of the regular scheduled lease payment

### PAYMENT TERMS / PAYMENT DUE AT SIGNING

| Due Date | 1st Payment Due Date | Discount Rate | Renewal Payment | $12,130.88 |
|---|---|---|---|---|
| 28 | 05/28/2017 | Internal Rate of Return minus 2 percent (2%) | Origination Fee | $0.00 |
| **Billing Period** | Irregular Payments | | Security Deposit | $0.00 |
| ☐ Monthly<br>☐ Quarterly<br>☒ Semi-Annual<br>☐ Annual<br>☐ Irregular | PAYMENTS DUE IN MAY AND NOVEMBER | | Total Due At Signing | SEE ATTACHED INVOICE |

"Master Agreement" shall mean the above referenced Master Lease Agreement. "Schedule" shall mean this Lease Schedule. "Lease" shall mean this Schedule and the Master Agreement. All of the terms and conditions set forth in the Master Agreement and any amendment, addendum, schedule or attachment thereto or hereto are hereby incorporated into and made a part of this Schedule.

**Lease Payments.** You agree to remit the Lease Payments (and applicable sales, use and property taxes) on the dates noted above and all other amounts when due to: DEERE CREDIT, INC., P.O. Box 4450, Carol Stream, IL 60197-4450.

**Hourly Charges.** You certify that the hour meter reading on each item of Equipment is accurate as of the date you sign this Schedule. If you use any Equipment during the Lease Term for more than the Hourly Limit indicated above for that item of Equipment, you will pay to us within 10 days of the Lease Term End Date (or any earlier termination of the Lease) an amount equal to the Excess Hour Charge for that item of Equipment for each hour in excess of the Hourly Limit. If the Lease is terminated, cancelled or extended for any reason, the Hourly Limit will be prorated by us in our sole discretion.

**Purchase Option.** You may purchase the Equipment on the Lease Term End Date (or the Renewal Term End Date) for the applicable Purchase Option Price (plus applicable Taxes including estimated property taxes), provided (1) you are not in default; (2) we receive written notice of your intent to purchase the Equipment at least 60 days before the Lease Term End Date (or the Renewal Term End Date); and (3) we receive the Purchase Option Price and any other amounts you owe us on or before the Lease Term End Date (or the Renewal Term End Date). Upon receipt of the Purchase Option Price, we will transfer to you all of our right, title and interest in such item(s) of Equipment AS-IS, WHERE-IS, WITHOUT ANY WARRANTY AS TO CONDITION OR VALUE.

**Representations and Warranties.** You represent and warrant to us, as of the date you signed this Schedule, that (1) the Equipment was selected by you; (2) the Equipment (including all manufacturer manuals and instructions) has been delivered to, and examined by, you; (3) the safe operation and the proper servicing of the Equipment were explained to you; (4) you received the written warranty applicable to the Equipment and understand that your rights under the written warranty may be limited; (5) the Equipment is unconditionally and irrevocably accepted by you as being suitable for its intended use; (6) the Equipment is in good condition and repair (operating and otherwise); (7) the Equipment shall be used only for the purpose indicated herein; (8) except as disclosed to us, neither you nor any person related to you will have an equity interest in the Equipment on the Lease Term Start Date; and (9) all information provided to us by you is true and correct.

You acknowledge and agree that: (1) we did not select, manufacture or supply any of the Equipment; (2) we acquired the Equipment at your direction; (3) you selected the supplier of the Equipment; (4) you are entitled to all manufacturer warranties ("Warranty Rights") and we assign all Warranty Rights to you, to the extent assignable; (5) you may request an accurate and complete statement of the Warranty Rights, including any disclaimers and limitations, directly from the manufacturer; and (6) you assign to us all your rights (but none of your obligations) under all purchase orders, purchase agreements or similar documents relating to the Equipment. You waive all rights and remedies conferred upon a lessee under Sections 508 – 522 of Article 2A of the Uniform Commercial Code.

Lease Payments may be based on the assumption that we will be entitled to certain tax benefits as the owner of the Equipment. If you take or fail to take any action that results in a loss of such tax benefits, you will pay us, on demand, the amount we calculate as the value of such lost tax benefits.

**Miscellaneous.** You agree that we can access any information regarding the location, maintenance, operation and condition of the Equipment, and you irrevocably authorize anyone in possession of such information to provide all of that information to us upon our request. You also agree to not disable or otherwise interfere with any information-gathering or transmission device within or attached to the Equipment. You permit us to monitor and record telephone conversations between you and us. By providing any telephone number, including a mobile phone number, to us, any of our affiliates or any debt collectors we retain, we, such affiliates and such retained debt collectors can contact you using that number, including calls using an automatic dialing and announcing device and prerecorded calls, and that such calls are not "unsolicited" under state or federal law. All of our rights under each Lease shall remain in effect after the expiration of the Lease Term or termination of the Schedule.

Universal Renewal Operating Lease Stated Purchase Option          Nov 15 2013

# RECEIVED

## MAR 13 2017

# DEERE CREDIT INC.

EXHIBIT

C

## Lease Schedule – Equipment List

| Supplier (Name & Address) | TROXEL EQUIPMENT COMPANY 5068 E. 100 NORTH, BLUFFTON, IN 46714 |
|---|---|

### EQUIPMENT INFORMATION

| Year | Make | Model | Equipment Description | Serial Number | Hour Meter | Hour Limit | Excess Hour Charge | Payment | Purchase Option |
|---|---|---|---|---|---|---|---|---|---|
| 2013 | JD | 9510R T | TRACK TRACTOR | 1RW9510RLDP9 02543 | 25 | 300/YR | $148.58/HR | $12,130.88 | $153,000.00 |
| | | | | THE MAXIMUM HOURS ON THE EQUIPMENT AT RENEWAL IS:925 | | | | | |

| Equipment Location | 7690 CO RD 53, LEWISTOWN, OH, 43333 | OUTSIDE city limits: ☒ | LOGAN COUNTY |
|---|---|---|---|

BY SIGNING THIS SCHEDULE, YOU AGREE TO ALL OF THE TERMS AND CONDITIONS OF THIS SCHEDULE AND THE MASTER AGREEMENT.

| LESSEE | SHAWN J WILDERMUTH 7690 CO RD 53 LEWISTOWN, OH 43333 | LESSOR | DEERE CREDIT, INC. 6400 NW 86th ST, PO BOX 6600 JOHNSTON, IA 50131-6600 |
|---|---|---|---|
| By: SHAWN J WILDERMUTH | | By: | |
| Date: 3/7/2017 | | Date: 3/10/17 | |

Universal Renewal Operating Lease Stated Purchase Option        Nov 15 2013

RECEIVED

MAR 1 3 2017

DEERE CREDIT INC.

 **JOHN DEERE**
**FINANCIAL**

John Deere Financial
6400 NW 86th Street, P.O. Box 6600
Johnston, Iowa 50131-6600  USA

# LEASE RENEWAL REQUEST

| Lease Number 1-002 | Request Date 2/28/2017 | Request Time | Requested By CANDICE DANIELS |
|---|---|---|---|

Lessee Name
SHAWN J WILDERMUTH

Social Security or Tax ID

Address
7690 COUNTY ROAD 53

| City LEWISTOWN | County | State OH | Zip 43333 |
|---|---|---|---|

| Branch Number | Dealer Number 034413 | Dealership Name TROXEL EQUIPMENT CO., LLC |
|---|---|---|

Physical Address
5068 E 100 NORTH

Dealership Contact Person

| City BLUFFTON | State IN | Zip 46714 | Dealer Phone Number (260)565-3659 |
|---|---|---|---|

| DATE RENEWAL BEGINS 05/28/2017 | DATE RENEWAL ENDS 05/28/2022 | Current Hours on Unit |
|---|---|---|

Requested Hours of Use Per Year
300

Email Docs To

tommoser@TROXELEQUIPMENT.COM

Dealer Recourse
$ CONTRACT RECOURSE
$153,000

Comments

KEEPING FULL CONTRACT
RECOURSE

**Dealer Add-On** $  250 ALSO ADDING POWERGUARD SEE NOTES

| Total Retail Price $ 246125.00 | Payment Plan | SOS Verified? N/A |
|---|---|---|
| Base Lease Payment $ | Purchase Option Amount $   153000.00 | Insurance Premium (IF ANY) $   N/A |
| Length of Lease(months) | Number of Payments | |

Notes:     ADDING POWERGUARD OF $8875.00........DEALER REQUESTED RV OF $153,000 ACCORDIING
TO RENEWAL CHART RV COULD HAVE BEEN $153,616.89 DEALER HAD SAY IN REDUX RV BECAUSE
FULL CONTRACT RECOURSE...TOM MOSER IS DEALER CONTACT...